UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMMY OSBY,

Plaintiff,

v.

CITY OF NEW YORK,

Defendant.

No. 13-cv-8826 (TPG)

**OPINION**

The Second Circuit Court of Appeals issued a Summary Order on February 3, 2016, which vacated and remanded part of this court's judgment of August 19, 2014, as to pro se plaintiff Tammy Osby's discrimination and retaliation claims under the Americans with Disabilities Act ("ADA"). Although the Court of Appeals affirmed all other aspects of this court's decision, the three-judge panel held that this court erred in dismissing the above discrimination and retaliation claims when it held that she failed to plead the elements of a prima facie case, when it denied Osby leave to amend her complaint, and when it did not specify which of Osby's allegations had merit and which were deficient. The court resolves these items in the opinion below.

## Factual Background

The court assumes familiarity with the factual background of this case, which is set out more fully in this court's prior opinion. Op. 1–5, ECF No. 22,

Aug. 19, 2014. For purposes of this opinion, the relevant facts are as follows. In 2012 Osby filed a charge with the Equal Opportunity Employment Commission ("EEOC") alleging retaliatory discrimination and disability discrimination. Osby's present complaint incorporates by reference the 2012 EEOC charge. Indeed, save for certain non-substantive handwritten notes, the narrative accompanying Osby's EEOC charge is virtually identical to the list of facts Osby attached to her complaint. Compare Compl. 6–9, with Renaghan Decl., ECF No. 8-2, at 2–4.

Osby has alleged that she began experiencing knee pain in approximately September 2011 and sought treatment for it in February 2012. ECF No. 2, at 6, ¶¶ 9–10. After asking for and receiving sick leave to attend weekly knee treatments, Osby's employer asked her for medical documentation. Id. ¶¶ 11–12.

Additionally, at some unspecified time, Osby also noted discrepancies in her pay and leave-without-pay record, and she investigated her own time and leave documentation. Id. ¶ 13.

Osby's knee ultimately required surgery, which meant that Osby would need to take leave pursuant to the Family and Medical Leave Act ("FMLA"). Id. ¶¶ 14–15. Osby does not make clear whether this FMLA request was granted, but Osby does state that she indeed took the leave. Id. ¶ 17.

Sometime after she requested FMLA leave, Osby alleges that her employer inundated her with work, id., revealed the results of an audit that showed Osby had been overpaid in error and thus docked her paycheck, and erroneously

deducted from her paycheck even more time than was quoted in the audit results. Id. ¶ 19.  Osby complained about these actions and was summoned to discuss her concerns with her employer. Id. ¶¶ 20–21.  Osby does not state that she received any discipline or adverse employment action following this meeting.

Nearly two months after the first meeting, the day before Osby was scheduled for surgery, Osby was summoned to attend a last-minute meeting with her employer to discuss "all of [Osby's] violations" and to review Osby's "case files." Id. ¶ 24.  At that meeting, Osby alleges that she was threatened with a disciplinary write-up. Id. ¶¶ 24–25.  Apparently no such write-up was ever filed. Id.

Later that year, Osby appeared before the Gun Committee of the Department of Probation. Id. ¶ 19.  This Gun Committee appearance had to do with unrelated events that occurred in 2007. Id. ¶ 26.  Those unrelated events culminated in the removal of Osby's privilege to carry a weapon. Id.  At the 2012 Gun Committee hearing, Osby requested that her weapon be returned to her. Id.  In response, Osby alleges that Ralph DiFiore, Associate Commissioner of the Department of Probation, asked Osby if she "fore[saw] herself getting sick again." Id.

As far as the court is aware, Osby continues to work at the Department of Probation.

## Discussion

The question before the court on remand is narrow:  whether Osby has stated plausible discrimination and retaliation claims under the ADA such that

defendant's motion to dismiss should be denied.  For the reasons set forth below, the court answers this question in the negative and grants defendant's motion to dismiss in its entirety.  However, Osby is given leave to amend her complaint to address the problems in her pleadings described in detail below.

## A. **Motion to Dismiss Standard**

A complaint asserting an employment discrimination claim need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss.  See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015).  Rather, a plaintiff must simply plead "plead facts sufficient to state a claim to relief that is plausible on its face." Harper v. N.Y.C. Hous. Auth., 673 F. Supp. 2d 174, 178, 180 (S.D.N.Y. 2009) (internal quotation marks omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2008).  The plaintiff's burden at this stage is therefore minimal.

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011), (quoting Iqbal, 556 U.S. at 678); see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

## B. **Consideration of Materials Outside of the Complaint**

In opposition to defendant's motion to dismiss, Osby tendered a single page affirmation and 207 pages of exhibits, none of which were presented to the court previously. ECF No. 16. The court's treatment of these new materials is governed by Federal Rule of Civil Procedure 12(d). Pursuant to Rule 12(d), the court must determine whether the newly presented documents are (1) part of the pleadings such that the Court may consider them as part of the instant motion; (2) not part of the pleadings such that the documents should be excluded in deciding this motion to dismiss; or (3) not part of the pleadings but should be considered by converting the instant motion to dismiss into one for summary judgment. The court finds the second approach appropriate here.

Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir.1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); see also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) (citing cases). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Therefore, the court may consider the Osby's affirmation and exhibits

5

to be part of the pleadings if these documents are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.

Whether a document is attached to a complaint turns on whether it was actually included in the complaint. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). "[L]imited quotation" of documents not attached to the complaint "does not constitute incorporation by reference." Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985).

To be integral to a complaint, the plaintiff must have (1) "actual notice" of the extraneous information and (2) "relied upon th[e] documents in framing the complaint.'" Chambers, 282 F.3d at 153 (quoting Cortec, 949 F.2d at 48). "[M]ere notice or possession is not enough" for a court to treat an extraneous document as integral to a complaint; the complaint must "'rel[y] heavily upon [the document's] terms and effect'" for that document to be integral. Id. (quoting Int'l Audiotext, 62 F.3d at 72). Even if a document meets the dual requirements of integrality—reliance and notice—a court still may not consider it on a motion to dismiss if there is a dispute "regarding the authenticity or accuracy of the document" or "the relevance of the document" to the dispute. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

In this case, plaintiff's complaint makes no explicit reference to any document included in her opposition. Nor does Osby make clear, substantial,

6

and definite reference to the documents such that the court will view them as incorporated by reference into the complaint. The only remaining question is whether these extraneous documents are "integral" to Osby's complaint.

The parties do not challenge the "authenticity or accuracy" of the extrinsic documents, see id. at 134. And there is no dispute that, pursuant to the first prong of the integrality test, Osby had "actual notice" of the extraneous information since she enclosed the extrinsic documents with her opposition brief. Chambers, 282 F.3d at 153. Osby, however, is unable to satisfy the second integrality prong—reliance upon the documents in framing her complaint. Id. While the complaint may reference certain facts present in the extraneous documents, Osby does not "'rel[y] heavily upon [the documents'] terms and effect[s].'" Id. (quoting Int'l Audiotext, 62 F.3d at 72). Not only does the complaint lack any quotations these documents, it fails even to reference the existence of many of these documents. Also, although defendant had an opportunity in his reply brief to respond to the new evidence in the Osby affirmation and exhibits, defendant did not rely on this evidence in bringing its motion to dismiss and did not submit its own extrinsic evidence. Therefore, considering these documents in deciding the instant motion to dismiss may be prejudicial to defendant.

For the foregoing reasons, the court holds that the Osby affirmation exhibits are neither incorporated by reference nor integral to the complaint and, thus, will not be treated as part of the pleadings in deciding this motion to dismiss. The court also declines to convert the instant motion into a motion for

summary judgment since discovery has not commenced.  See Davidson v. Citicorp/Citibank, No. 90-cv-0941, 1990 WL 176426, at *2 (S.D.N.Y. Nov. 8, 1990) (Leisure, J.) ("[A]s no discovery has taken place, the Court is reluctant to convert this motion into a motion for summary judgment.").

The court now turns to Osby's claims against defendant and determines whether they plausibly state causes of action against defendant.

## C. **Discrimination in Violation of the ADA**

### 1. EEOC Charge and Statute of Limitation

A plaintiff seeking to bring suit under the ADA must file an administrative charge with the EEOC or equivalent local agency "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); see also Riddle v. Citigroup, 449 F. App'x 66, 69 (2d Cir. 2011).  "The [300-day] period begins to run for each discrete discriminatory or retaliatory act when each act occurs." Hemans v. Long Island Jewish Med. Ctr., No 10-cv-1158, 2010 WL 4386692, at *5 (E.D.N.Y. Oct. 28, 2010).  Thus, claims regarding acts that occurred more than three hundred days prior to the employee's filing a charge of discrimination with the EEOC are time-barred.  Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 125–26 (2d Cir. 2010).  This remains true even when the untimely discrete discriminatory acts alleged "are related to acts alleged in timely filed charges."  See Nat'l R.R. Passenger Corp. v. Mogan, 536 U.S. 101, 113 (2002).

Osby has filed multiple charges with the EEOC.  See Renaghan Decl., ECF Nos. 8-1 & 8-2.  Only one EEOC charge is germane here.  In that charge, Osby

alleged continuing discrimination based on retaliation and disability. Renaghan
Decl., ECF No. 8-2, at 1. She dated her EEOC charge December 12, 2012 and
it was stamped "received" on December 31, 2012. Id. However, on page six of
the complaint, Osby wrote that she filed an EEOC charge in February 2011. For
purposes of this motion and so that the court can proceed with its analysis and
provide guidance for Osby in repleading her complaint, the court will presume
that Osby's EEOC charge was filed and received in December 2012, not February
2011, because the EEOC charge itself reflects that information. See id.
Accordingly, claims regarding acts that occurred more than three hundred days
prior to December 12, 2012—or before February 16, 2012—are time-barred.

To the extent that Osby wishes to include in this suit her employer's 2007
decision to remove her gun privileges, ECF No. 2, at 6, ¶ 26, or any other event
that occurred prior to February 16, 2012, those claims are time-barred.
However, to the extent that Osby's suit concerns her employer's actions after she
began receiving medical treatment for her knee injury, on February 27, 2012,
those claims are not time-barred.

2. Osby's Disability

Title I of the ADA prohibits employers from discriminating against any
"qualified individual with a disability because of the disability of such individual
in regard to" any aspect of employment. 42 U.S.C. § 12112(a); see also Dawson
v. N.Y.C. Transit Auth., 624 F. App'x 763, 765–66 (2015). Not every impairment
constitutes a disability under the ADA. 42 U.S.C. § 12102(2)(A). "Disability" is
defined to include "a physical or mental impairment that substantially limits one

or more of the major life activities" of an individual.  Id.  Courts in the Second
Circuit divide the disability inquiry into three parts:  (1) whether plaintiff has a
mental or physical impairment; (2) whether that impairment impedes a major
life activity; and (3) whether the impairment presents a substantial limitation on
that major life activity.  See Bartlett v. New York State Bd. of Law Examiners,
226 F.3d 69, 79–81 (2d Cir. 2000).  Below, the court examines each issue in
turn.

i.   *Physical or Mental Impairment*

Physical impairment includes "[a]ny physiological disorder or condition,
cosmetic disfigurement, or anatomical loss affecting one or more of the following
body systems: Neurological, musculoskeletal, special sense organs, respiratory
(including speech organs), cardiovascular, reproductive, digestive, genitourinary,
hemic and lymphatic, skin, and endocrine."  28 C.F.R. § 35.104(1)(i)(A) (2011).
Knee injuries may qualify as physical impairments under the ADA.  See, e.g.,
Lyons v. Legal Aid Soc., 68 F.3d 1512, 1513 (2d Cir. 1995).  But see Holmes v.
N.Y.C. Dep't of City Wide Admin. Servs., No. 14-cv-8289, 2015 WL 1958941, at
*4 (S.D.N.Y. Apr. 30, 2015) (involving a knee injury that the court found to be a
temporary and transitory impairment and therefore not a qualifying physical
impairment under ADA).

The complaint before the court merely asserts that Osby has "knee
problems."  Compl., ECF No. 2, at 3.  In her EEOC charge, which was denied in
September 2013 and forms the basis of the complaint at issue, Osby contended
that, around September 2011, she began experiencing "pain in her knee caused

10

by a torn ligament from a previous on-the-job injury." ECF No. 2, at 6, ¶ 9; see also Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . . "). On February 27, 2012, several months after Osby began experiencing the knee pain, she began medical treatment. "At this time," Osby received weekly pain injections. ECF No. 2, at 6, ¶ 10. This record suggests that Osby's knee pain abated and there came a time that Osby's knee health improved. However, at some unspecified time, Osby's knee required surgery which was originally scheduled to take place in May 2012. Id. ¶ 14. Under all the circumstances, the court will consider Osby's knee injury as a qualifying physical impairment under the ADA.

      ii.   *Major Life Activities*

Next, the court must decide whether the life activities allegedly implicated by Osby's impairment are "major" life activities. "The term 'major life activit[y],' by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance." Reeves v. Johnson Controls World Servs., 140 F.3d 144, 151 (2d Cir. 1998). The question is whether the affected life activity is "major," as contemplated by the ADA. Id. at 151–52. The regulations list life activities that are "major life activities per se," id. at 152, including "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 28 C.F.R. § 35.104(1)(iii).

11

Osby wrote in her EEOC charge that her knee problems "made it difficult to walk or stand for long periods of time, and was particularly challenging during her field work [as a Probation Officer with the New York City Department of Probation]." ECF No. 2, at 6, ¶ 9.  Walking is surely a major life activity this prong of the analysis is met.

    iii.   *Substantial Limitation*

The court must also assess whether Osby's impairment "substantially limits" her with respect to the major life activity of walking.  Substantial limitation is not statutorily defined, but it has been understood to include restrictions "as to the conditions, manner, or duration under which [important life activities] can be performed in comparison to most people."  Bartlett, 226 F.3d at 80 (citing 28 C.F.R. § 35, App. B (2011)).  The use of corrective devices or mitigating measures "does not, by itself, relieve one's disability."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 488 (1999) (overturned on other grounds). Osby is required to show that any limitations are "in fact substantial," not amounting to only a "mere difference" in "conditions, manner, or duration." Bartlett, 226 F.3d at 80 (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 564–65 (1999)).

As noted above, Osby stated that she had trouble walking or standing for long periods of time, and this posed a challenge during her field work.  ECF No. 2, at 6, ¶ 9.  While it is important to understand whether and to what extent Osby's work requires her to stand or walk for long periods of time such that her standing and walking abilities are challenged, the limitations Osby describes are

sufficient at the motion to dismiss stage, particularly because she is a pro se litigant and is thus entitled to a liberal reading of her pleadings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

3. Pleading Discrimination Under the ADA

As discussed above, Osby has asserted facts sufficient to plausibly allege that her knee injury constitutes a disability within the meaning of the ADA.  To make out a cognizable ADA discrimination claim based on that disability, Osby must plausibly allege: (1) that she was a member of a protected class; (2) that she was qualified for her job; (3) that she suffered an adverse employment action; and (4) facts providing at least minimal support for the proposition that the defendant was motivated by discriminatory intent.  See Dawson, 624 F. App'x at 766 (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)).

Osby's membership in a protected class or her qualifications are not in dispute at this time.  Rather, the central questions are whether the complaint sufficiently alleges that Osby was subject to an adverse employment action, and whether that adverse employment action was motivated by discriminatory intent.

There exists no bright-line rule to determine whether a challenged employment action is sufficiently "adverse" to serve as the basis for a claim of discrimination.  Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).  However, to qualify as an adverse employment action, the employer's action toward the plaintiff must be must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted).  Indeed, the

action must be "materially adverse" with respect to "the terms and conditions of employment." Id.

Osby has alleged that, at some point following a flare-up of her knee pain: (1) she was asked for additional medical documentation even after her sick leave was approved, ECF No. 2, at 6, ¶ 11; (2) she was asked to complete many work-related tasks which she believed were impossible to complete within the time requested, id. ¶ 17; (3) she noticed errors in time-keeping and believed that her pay and leave were erroneously docked, id. ¶ 19, and was "reprimanded" for attempting to account for her own time and leave, id. ¶ 13; (4) that her time and leave were audited but not by an outside source, as she requested, id. ¶¶ 18, 22; (5) she was summoned to a last-minute case meeting where she was threatened with disciplinary action, id. ¶¶ 24–26; (6) she has never been promoted, id. ¶ 29; and (7) she is heavily monitored throughout her work day, id. ¶ 30.

Osby's claimed adverse employment allegations—unpleasant and frustrating as they may have felt to her—do not rise to the level of adverse employment actions within the meaning of the law. Rather, they are best characterized as "[e]veryday workplace grievances, disappointments, and setbacks" which "do not constitute adverse employment actions." See La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 211 (2d Cir. 2010); see also Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567 (S.D.N.Y. 2008) (allowing employers to make reasonable requests for medical documentation); MacEntee v. IBM (Int'l Bus. Machs.), 783 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (relating to monitoring of time and timekeeping); Blythe v. City of New York, 963

F. Supp. 2d 158, 173 (E.D.N.Y. 2013) (involving monitoring, a reprimand, and disciplinary meeting without an adverse result on plaintiff's employment status).

Nor has Osby suggested that she suffered "a materially significant disadvantage with respect to the <u>terms</u> of [her] employment," <u>Williams v. R.H. Donnelley, Corp.</u>, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted) (emphasis added), such as "termination of employment, a demotion . . . , a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation," <u>Galabya v. N.Y.C. Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000). Instead, Osby merely states that she was treated unfairly, audited, subject to a write-up, asked to participate in case meetings, and denied access to a firearm but apparently without demotion. These are not the types of "material losses" for which the ADA allows redress. This is especially true where Osby did not make any factual allegations with regard to the impact, if any, that those events had on the terms of her employment.

The complaint also fails to draw a cognizable causal connection between Osby's disability and her treatment in the workplace. For example, where Osby claims that her employer failed to promote her, the complaint is bare of facts supporting any connection between Osby's disability and her failure to be promoted. Indeed, the facts of the case contradict any inference that there is a connection between Osby's physical ailment and her lack of promotion. Osby has been employed by the Department of Probation since November 1991, but her knee pain began in September 2011. If Osby was not promoted in her nearly

25-year tenure at the Department of Probation, Osby's knee injury in 2011 cannot have been the sole cause. Otherwise, Osby does not provide support for the argument that her employer passed her up for promotions or recognitions because she is disabled or for any other discriminatory purpose. The same can be said of Osby's other claimed grievances. Osby has not alleged or provided plausible facts supporting an inference that she is closely monitored, reprimanded, audited, or given impossible tasks because she is disabled.

Accordingly, Osby has not stated a plausible claim for discrimination under the ADA and the claim is therefore dismissed. This is without prejudice to possible repleading. However, should Osby replead these allegations, she must pay particularly close attention to pleading facts from which this court can infer that: (1) her employer took an adverse employment action against her, and that (2) the action occurred under circumstances giving rise to an inference of discriminatory intent.

## D. **Retaliation in Violation of the ADA**

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation claim asserted under the ADA either must be filed with the EEOC or be reasonably related to a claim filed with the EEOC. See § 12203(c).

16

As noted above, on a motion to dismiss, "a plaintiff need not specifically plead every element of a prima facie case. At this stage, Osby must plausibly allege that (1) she engaged in an activity protected by the ADA; (2) her employer was aware of this activity; (3) her employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 71–72 (2d Cir. 2006).

The court notes at the outset that, as established above, Osby has not properly pled that she suffered an adverse employment action under the ADA. Osby's retaliation claim fails for this reason alone. But Osby's complaint suffers from other defects as well. Osby states that her employer acted "in retaliation for her prior activities," but she does not make clear what these activities included. ECF No. 2, at 6, ¶ 32. Moreover, the facts alleged do not support an inference of a causal connection between alleged discrimination and any adverse employment actions. In just one example, Osby wrote that she noticed mistakes on her payment and absence statements, and further that she took it upon herself to investigate these errors. But Osby does not state that her pay and leave were docked *because* she was disabled or *because* she complained of her treatment. Rather, Osby explicitly wrote that she was disciplined and "subsequently written up for checking on her own time." ECF No. 2, at 6, ¶ 13.

The specific example noted above is indicative of broader problems in Osby's complaint: many of Osby's grievances relate to supposed errors in her

time and leave, but Osby does not draw any clear connection between those errors and her disability or her protected activity. And even if Osby were able to articulate such a connection, Osby has still failed to suggest the existence of a retaliatory intent on behalf of her employer.

Furthermore, Osby does not indicate when she began noticing time and leave errors or when she began complaining about them. See id. at 6, ¶ 13. And while a court can infer a relationship between two events when they occur close in time, the court cannot do so here, where Osby has provided no notion of a time frame during which those events occurred. The court does not see any other basis on which to infer a causal connection between the knee injury and any errors in Osby's time and leave record, and Osby does not explicitly argue that one exists.

Lastly on this point, Osby notes in her recital of facts in her EEOC charge that she was treated differently from "similarly situated" probation officers. This vague reference does not support any plausible inferences of discrimination as Osby does not identify the other probation officers or specify what makes them "similarly situated."

The only potential connection between Osby's disability and treatment by her employer is time-barred and too vague to be credited. Osby alleged that she was stripped of her privilege to carry a weapon in 2007 following events unrelated to this cause of action, and in 2012, the Gun Committee of the Probation Department held a hearing at which Osby appeared and asked for the return of her weapon. In response, Osby was asked whether she "foresees herself getting

18

sick again." This described event might have sufficed as a connection between Osby's treatment and her disability if the 2007 removal of Osby's weapon privileges had anything to do with the facts of this case. Instead, the facts leading up to Osby's removal of gun privileges are wholly unrelated, and moreover, they are time barred because they occurred before February 16, 2012. In addition, though the alleged statement is suggestive, it is not clear whether "getting sick again" necessarily refers to Osby's knee injury.

For all of the above reasons, the court finds that Osby has not stated a cognizable claim for retaliation under the ADA and this claim is dismissed without prejudice. If Osby repleads this claim in an amended complaint, she must, inter alia, allege facts that would tend to show that she experienced an adverse employment action, and that the adverse employment action was a direct consequence of Osby engaging in some protected activity. Any amended pleading should consistently and accurately state the date of which she filed her EEOC charge and attach a true and correct copy of the relevant EEOC charge.

## E. Leave to Amend

"A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Accordingly, in light of plaintiff's pro se status, she will be afforded the opportunity to replead her ADA discrimination and retaliation claims and cure the defects in her complaint.

19

## **CONCLUSION**

Osby has not stated plausible claims for discrimination or retaliation under the ADA, and, accordingly, her complaint is dismissed in its entirety. The dismissal is without prejudice, however, and the court grants Osby leave to file an amended complaint as to plaintiff's claims for discrimination and retaliation under the ADA.

SO ORDERED.

Dated:  New York, New York
   August 15, 2016

              Thomas P. Griesa
              United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/15/16