UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/22/17
```

TAMMY OSBY,

                Plaintiff,

v.

CITY OF NEW YORK,

                Defendant.

13-cv-8826

**OPINION**

Plaintiff Tammy Osby, *pro se*, brings this action against the City of New York for discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and retaliation in violation of Title V of the ADA, 42 U.S.C. § 12203(a). Defendant moves to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In addition, plaintiff moves for leave to file a Second Amended Complaint. For the reasons below, the Court grants defendant's motion to dismiss and denies plaintiff's motion for leave to file a Second Amended Complaint.

## BACKGROUND

### I. Facts[1]

---

[1] The following facts are taken from the allegations set forth in plaintiff's Amended Complaint and are accepted as true for purposes of this Opinion. Some facts are also taken from plaintiff's original Complaint where necessary to supplement factual gaps in her Amended Complaint.

1

Plaintiff Tammy Osby, proceeding *pro se*, is a probation officer at the New York City Department of Probation ("DOP"). In 2004, plaintiff passed a civil service exam, which is a pre-requisite for certain positions within the DOP. Am. Compl. ¶ 26. In spite of passing this exam, however, plaintiff was passed over for a promotion. *Id.* Then, in 2007, plaintiff's employer confiscated her personal firearm—an act which plaintiff alleges was retaliation for her filing a report against another officer. *Id.* ¶ 16.

In 2008, plaintiff tore ligaments in her left knee while she was on duty. Am. Compl. ¶ 3. She underwent surgery to repair her injury and took a medical leave of absence for approximately two months. *Id.* ¶¶ 3–4. When she returned to work in 2008, plaintiff requested to be transferred to the DOP office located in Brooklyn. *Id.* ¶ 5. The DOP denied plaintiff's request for transfer. *Id.* ¶ 5.

Sometime later, in September 2011, plaintiff began experiencing pain in her left knee again. *Id.* ¶ 3. Plaintiff sought treatment for the pain sometime in February 2012. *See id.* ¶ 7; *see also* Compl. ¶ 10. As part of this treatment, plaintiff requested one hour of medical leave from work every Monday at 4:00PM for eight weeks. Am. Compl. ¶ 7. The DOP approved this request. *Id.* After these eight weeks of treatment concluded, plaintiff was scheduled to undergo a second surgery on her left knee in May 2012. *Id.* ¶ 9.

For the last several years, plaintiff has experienced payroll and computer problems at work. *See id.* ¶ 8. For example, plaintiff alleges that she has not been paid on time, her paychecks have been docked, and her employer posted "inaccurate leaves without pay" on her time entry sheets. *Id.* Moreover, after

she completed her eight weeks of treatment on her left knee in 2012, plaintiff was repeatedly asked to provide further medical documentation to support her medical leaves, which, in turn, required plaintiff to make several additional visits to her orthopedic doctor. *Id.* ¶ 7. In May 2012, the Timekeeping Department at the DOP conducted a "surprise" audit of her time entries and docked plaintiff's next paycheck by approximately 12 hours' worth of wages. *Id.* ¶ 8.

Plaintiff asked the Timekeeping Department for clarification as to why she was audited and her pay was docked, and the department scheduled a meeting with plaintiff in late May 2012. *Id.* ¶ 9; *see also* Compl. ¶ 14. Because of this meeting, plaintiff rescheduled her knee surgery for July 2012. Am. Compl. ¶ 9. It appears that the Timekeeping Department did not overturn its decision to dock plaintiff's pay. *See id.* ¶¶ 8–9.

Since her second knee surgery in July 2012, plaintiff has experienced daily pain and has difficulty walking. *Id.* ¶ 24. As a result, plaintiff requested that she be allowed to meet with her clients near the entrance of the building instead of having to walk back to her office. *Id.* Although the DOP approved plaintiff's request, plaintiff had trouble accessing the computers in the front of the building, making it difficult for her to complete her work. *Id.* This computer problem was eventually rectified after she brought it to the attention of her superiors. Nonetheless, plaintiff alleges that she has experienced various technical issues on the following dates: January 12, 2016; February 12, 2016; May 4, 2016; August 11, 2016; August 25, 2016; September 20, 2016;

3

September 27, 2106; October 24, 2016; October 27, 2016; and November 3, 2016. *Id.*

In 2015, plaintiff's supervisor at the DOP issued an annual evaluation of plaintiff's performance, giving her an overall rating of "good." *Id.* ¶ 19. Plaintiff, however, believes that this evaluation was "illegal" because, among other reasons, her supervisor incorrectly represented that he had supervised her for the entire year. *Id.* Plaintiff also believes that she should have received at least a "very good" performance review. *Id.*

In August 2016, plaintiff applied for a later transfer to be an Early Discharge Officer at the DOP but the branch chief has yet to decide who should fill that role. *Id.* ¶ 20. Also in August 2016, plaintiff filed a request with the "Armourer" of the DOP to return her firearm. *Id.* ¶ 15. The DOP's Gun Committee scheduled a meeting with plaintiff in November 2016 to review her request but ultimately denied it. Pl.'s Opp. at 5.

## II. Procedural History

Plaintiff commenced this action on December 11, 2013. ECF No. 1. Defendant filed a motion to dismiss plaintiff's Complaint on February 27, 2014. ECF No. 7. In an Opinion dated August 19, 2014, the Court (1) granted defendant's motion to dismiss in its entirety and (2) denied plaintiff leave to amend her Complaint on the basis of futility. ECF No. 22. Plaintiff appealed the Court's dismissal on September 12, 2014 and, on February 3, 2016, the Second Circuit, among other things, remanded this matter to allow plaintiff, as a *pro se* litigant, a chance to re-plead her claims. ECF No. 27. This Court, after

4

reviewing plaintiff's Complaint again in light of the Second Circuit's mandate, granted plaintiff leave to amend on August 15, 2016. ECF No. 28.

Plaintiff filed an Amended Complaint on November 15, 2016. ECF No. 33. Defendant filed a motion to dismiss plaintiff's Amended Complaint ("Motion") on January 13, 2017. ECF No. 39. After the Court granted several extensions of time for plaintiff to respond, she filed an Opposition to Defendant's Motion to Dismiss ("Opposition") on April 24, 2017. ECF No. 47. The Opposition, rather than addressing the arguments raised in defendant's Motion, simply sets forth new allegations not present in her Amended Complaint. *See* ECF No. 47. Shortly thereafter, on June 7, 2017, plaintiff filed what appears to be a Second Amended Complaint. ECF No. 50.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). But while the Court must accept as true "all of the factual allegations in the complaint," it may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

5

statements." *Id.* A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, the Court notes that although plaintiff's Opposition does not address the merits of defendant's Motion, that fact does not, by itself, warrant dismissal of plaintiff's Amended Complaint. *Richardson v. City of New York*, No. 12 Civ. 2545(WHP), 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2013) (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). "Rather, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (internal quotations and citation omitted). "Moreover, because [plaintiff] is a pro se litigant, this Court construes [her] pleadings liberally and interprets them to raise the strongest arguments they suggest." *Id.* (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002)).

## DISCUSSION

### I. 42 U.S.C. §§ 12112(a) and 12203(a)

Plaintiff brings an employment discrimination claim under Title I of the ADA, 42 U.S.C. § 12112(a), and an unlawful retaliation claim under Title V of the ADA, 42 U.S.C. § 12203(a). 42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." To make out a claim under this

section, plaintiff must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dept. of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)).

42 U.S.C. § 12203(a), on the other hand, provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." To state a claim for such retaliation under the ADA, plaintiff must allege: (1) that she engaged in an activity protected by the ADA; (2) that her employer was aware of this activity; (3) that her employer took an adverse employment action against her; and (4) that a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

At this stage, however, plaintiff need not establish a *prima facie* case for either claim to survive a motion dismiss. *Osby v. City of New York*, 633 F. App'x 12, 13 (2d Cir. 2016). Instead, plaintiff's burden of pleading discrimination here is "minimal." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Plaintiff need only allege "that [her] employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging

7

facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

In light of that standard, the Court held in its August 15, 2016 Opinion that plaintiff's Complaint adequately pled that her employer is subject to the ADA and that she is disabled within the meaning of the ADA. *See* ECF No. 28 at 9–13. But the Court held that plaintiff failed to adequately plead any adverse employment actions that rose beyond mere "[e]very day workplace grievances, disappointments, and setbacks." *Id.* at 14 (quoting *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010)). The Court further held that plaintiff's Complaint "fail[ed] to draw a cognizable causal connection between [her] disability and her treatment in the workplace"—i.e., that any adverse actions were imposed *because of* her disability. *Id.* at 15. For those reasons, the Court dismissed plaintiff's ADA employment discrimination and retaliation claims. *Id.* at 20.

But because plaintiff is proceeding *pro se*, the Court granted her leave to amend her Complaint. *Id.* at 19. In doing so, the Court instructed plaintiff—in the event she chose to exercise her leave to amend—to take special care to allege more facts from which the Court could infer: (1) that her employer took adverse employment actions against her, *id.* at 16; (2) that those adverse actions stemmed from discriminatory animus, *id.*; (3) and, with regard to her retaliation claim, that any adverse actions stemmed from her engaging in protected activities, *id.* at 19.

8

In her Amended Complaint, plaintiff alleges the following adverse employment actions: (1) that she was turned down for a promotion after she passed her civil service exam in 2004, Am. Compl. ¶ 32; (2) that her employer confiscated her firearm in 2007, *id.* ¶ 13; (3) that her employer denied her lateral transfer requests in 2008, *id.* ¶ 31; (4) that she was docked twelve hours of pay after a payroll audit in 2012, *id.* ¶¶ 8–9; (5) that she has experienced various computer and "Cititime access" issues, *id.* ¶ 31; (6) that she was given an "illegal" work evaluation by her supervisor, *id.* ¶ 19; (7) that her supervisor has not "made up his mind" about whether to approve her August 2016 lateral transfer request, *id.* ¶ 20; (8) that she has been asked to complete her time entry sheets on a daily basis, Pl.'s Opp. at 1–3; and (9) that she has been asked repeatedly to submit additional medical documentation to support her medical leaves of absence, *id.*

Among these allegations, only (4)-(9) of the purported adverse employment actions are to be considered. The other allegations are clearly time-barred. *See* ECF No. 28 at 9 ("To the extent that Osby wishes to include in this suit her employer's 2007 decision to remove her gun privileges . . . or any other event that occurred prior to February 16, 2012, those claims are time-barred."). The fact that plaintiff has alleged that she recently—and repeatedly—requested that her firearm be returned to her does not revive that claim. *See O'Leary v. Town of Huntington*, No. 11-CV-3754(JFB)(GRB), 2012 WL 3842567, at *7 (E.D.N.Y. Sept. 5, 2012) ("Mere requests to reconsider cannot extend limitations periods applicable to the ADA." (citations omitted)).

9

Plaintiff's time-barred allegations aside, all but one of her remaining allegations fail to make out a discrimination or retaliation claim because they do not constitute adverse employment actions under the ADA. To qualify as an adverse employment action, the employer's action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams v. R.H. Donnelly, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Directing an employee to submit her time sheets on a daily basis and requesting further medical documentation to support medical absences plainly fail to meet this standard. *See MacEntee v. IBM (Int'l Bus. Machs.)*, 783 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (holding that employer's supervision and scrutiny of employee's work and timesheets was not an "adverse employment action"); *Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 453 (D. Mass. 2010) ("Being asked to produce additional paper work, even if the request was unreasonable, does not constitute 'adverse employment action' under the ADA." (citing *Henriquez v. Times Herald Record*, No. 96-6176, 1997 WL 732444, at *6 (S.D.N.Y. Nov. 25, 1997)).

Moreover, plaintiff's principal complaint with her supervisor's purportedly "illegal" evaluation of her performance is that she received a "good" rating instead of a "very good" or "outstanding." Am. Compl. Ex. B at 33 ("I am requesting that the Appeals Committee do what [is] fair by voiding this 6 month evaluation, filled with [hearsay] and inaccuracies, and resubmit an evaluation which reflects my job performance for the entire 2014 evaluation period to

10

reflect a fair and accurate rating of Very Good."). As an initial matter, a performance evaluation that rates plaintiff as "good," but not "very good" is not materially adverse. And, in any event, it is unclear how this evaluation was "illegal." Further, most of plaintiff's complaints about her performance evaluation contemplate minor employment difficulties: that her supervisor could not have properly evaluated her because he was her supervisor only for half of the year; that her supervisor at times gave her conflicting instructions; and that she should not be held responsible for scanning important documents into the "efile" because someone else had volunteered to do it. *Id.* These issues are paradigmatic "[e]veryday workplace grievances, disappointments, and setbacks" and "do not constitute adverse employment actions." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010).

Plaintiff's sporadic—i.e., generally less than once per month, *see* Am. Compl. ¶ 24—computer and Cititime access issues similarly fail to rise above a mere inconvenience. Indeed, plaintiff concedes that her computer issues were "rectified" after she complained about them to her employer. *Id.* And finally, the fact that her supervisor has yet to make up his mind about whether to approve of her August 2016 lateral transfer request cannot be an "adverse employment action" because that decision is still pending.

The only remaining adverse employment action allegation, then, concerns plaintiff's payroll audit and subsequent docked pay. While plaintiff's payroll audit, standing alone, may be not be materially adverse, the result of that audit—i.e., 12 hours of docked pay—constitutes an adverse employment

11

action because it materially affected plaintiff's compensation. *See* 42 U.S.C. § 12112(a) (expressly proscribing discriminatory actions concerning employee compensation); *cf. Acheampong v. N.Y.C. Health & Hosps. Corp.*, No. 11CV9205-LTS-SN, 2015 WL 1333242, at *13 (S.D.N.Y. Mar. 25, 2015) (assuming, without deciding, that docking of employee's pay was an adverse employment action).

However, plaintiff has nevertheless failed to meet her minimal burden of showing that the adverse employment action was imposed *because of* discriminatory animus. The Court first notes that plaintiff's Amended Complaint does not allege any facts directly supporting a finding of discriminatory animus. *See generally* Am. Compl. Thus, the sole basis from which the Court may infer discriminatory animus is the fact that plaintiff's employer imposed an adverse employment action close in time to when she began her medical leave of absence in 2012. *See* Am. Compl. ¶ 8. But this fact, alone, is not fatal; indeed, it is well-settled in this Circuit that temporal proximity can give rise to a causal inference of discrimination. *See, e.g., Summa v. Hofstra Univ.*, 708 F.3d 115, 127–28 (2d Cir. 2013). Yet because drawing this causal inference solely because of temporal proximity is a context-specific inquiry, the Second Circuit has declined to "draw[] a bright line" rule to govern these cases. *Id.* at 128 (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Here, although plaintiff alleges a close temporal relationship between the time she began taking medical leave for her knee injury in 2012 and the time of

12

her payroll audit, the rest of plaintiff's Amended Complaint cuts against an inference of discriminatory animus. Plaintiff's exhibits demonstrate a persistent history of entering her time incorrectly into her employer's time entry. *See* Am. Compl. Ex. B.[2]; *see also* Pl.'s Opp. Ex. A.[3] It appears from plaintiff's Amended Complaint that: her employer had specific policies governing how employees were expected to enter their leaves of absence into their payroll system; plaintiff did not abide those policies; and, as a result, it appears her employer corrected her time entries on numerous occasions to comport with their policies. Where countervailing facts such as these exist on the face of plaintiff's Amended Complaint, the Court declines to infer discriminatory animus solely on the basis of temporal proximity. For that reason, plaintiff's claims for discrimination and retaliation under the ADA fail.

## II.  Leave to Amend

As discussed above, plaintiff filed a Second Amended Complaint on June 7, 2017. ECF No. 50. As an initial matter, plaintiff's right to amend as a matter of course under Rule 15(a)(1) expired on March 20, 2014—i.e., 21 days after defendant filed a motion to dismiss her original Complaint. *See* Fed. R. Civ. P. 15(a)(1)(B). Therefore, if plaintiff wanted to file another amended complaint, she needed to comply with Rule 15(a)(2), which requires defendant's "written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff did not obtain

---

[2] ECF No. 33 at 40.
[3] ECF No. 47 at 24–26.

either of these pre-requisites to amend and plaintiff's Second Amended Complaint is therefore improperly filed.

But because plaintiff is proceeding *pro se*, the Court declines to require plaintiff's strict compliance with the Federal Rules of Civil Procedure. *See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). The Court thus construes plaintiff's Second Amended Complaint as a motion for leave to amend, rather than striking it outright. Still, although leave to amend should be given "freely . . . when justice so requires," Fed R. Civ. P. 15(a)(2), "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 324 (2d Cir. 2009) (alteration in original; quotations and citation omitted).

Here, plaintiff's Second Amended Complaint is futile. Plaintiff's Second Amended Complaint alleges that her employer challenged her time entries documenting the reasons for her leaves of absence on May 2, 2017 and May 5, 2017. ECF No. 50 at 1. Plaintiff also alleges that her requests to work overtime continue to be denied. *Id.* Finally, plaintiff states that she suspects that her employer is gearing up to fire her. *Id.* at 2. Notably, these allegations do not pertain to any of the allegations in plaintiff's First Amended Complaint. As such, it is difficult to see how plaintiff's Second Amended Complaint could resuscitate the flawed claims in her First Amended Complaint.

More importantly, however, the allegations in the Second Amended Complaint are refuted by plaintiff's own attached emails. For example, it is clear from the email from Contona Jones to Tammy Osby, dated May 16, 2017

14

at 12:32PM, that the DOP requires its employees to adhere to a strict policy after taking a medical leave of absence. ECF No. 50 at 4. It is also clear from that same email—and plaintiff's response to that email—that plaintiff did not adhere to that policy. *Id.* This not only rebuts plaintiff's allegation that the "fault [for her time entry issues] lies with [her] Timekeeping Department," *id.* at 1, but it cuts against plaintiff's claim that her employer's questioning of her time entries suggests any unlawful discriminatory animus.

Plaintiff similarly fails to allege that her employer's denials of her requests to work overtime stems from discriminatory animus. Indeed, she expressly alleges that the reason why her overtime requests are being denied is because of her issues with properly recording her leaves of absence. *Id.* at 2. And finally, plaintiff's mere suspicion that her employer is planning on firing her cannot form the basis of a claim under the ADA. Accordingly, plaintiff's Second Amended Complaint is futile and her motion for leave to amend is denied.

**CONCLUSION**

In sum, plaintiff's allegations of adverse employment actions fail to state claims for discrimination or retaliation under the ADA for one of the following reasons: (1) they are time-barred; (2) they are not, in fact, adverse employment actions; or (3) they fail to plausibly allege a nexus between the adverse action and discriminatory or retaliatory animus. Further, plaintiff's motion to amend is denied as futile. Accordingly, the Court dismisses this action. The Clerk of Court is respectfully directed to close this case.

SO ORDERED

Dated: September 22, 2017
New York, New York

                                              Thomas P. Griesa
                                              United States District Judge